UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GUY CUMMINGS,<br><br>Defendant. | Case No. 25-CR-44 (JEB) |

**GOVERNMENT'S OMNIBUS MOTIONS *IN LIMINE***

The defendant is charged by Indictment with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1). As laid out more fully in the government's motion in support of pretrial detention (ECF No. 6) and motion to continue or transfer case (ECF No. 10-11), MPD was patrolling the Lincoln Heights neighborhood when they saw the defendant standing with a group of other individuals. ECF No. 6 at 1-6 (Factual and Procedural History), ECF No. 10 at 1-6 (Facts). After spotting the police, the defendant separated himself from the group and as officers exited their patrol car, the defendant took off running. Officer Pfaff chased the defendant, never losing sight of him. *Id.* As the defendant fled, Officer Pfaff observed the defendant make a tossing motion with his right hand over a brick wall. *Id.* Officer Pfaff continued to chase the defendant and ultimately stopped him. *Id.* Officer Pfaff retraced his steps and recovered a firearm on the other side of a retaining wall where the defendant made the tossing motion. *Id.*

The government hereby submits this series of motions *in limine* to ensure that evidence and argument at trial is relevant, appropriate, and focused on the issues actually in dispute at this trial.

## ARGUMENT

I. **THE COURT SHOULD GRANT THE GOVERNMENT'S MOTIONS IN LIMINE TO ENSURE THE EFFICIENT AND APPROPRIATE PRESENTATION OF EVIDENCE.**

The Court may allow for motions *in limine* "pursuant to [its] inherent authority to manage the course of trials." *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (Lamberth, J.) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "Rule 103(d) of the Federal Rules of Evidence mandates that the court must conduct a jury trial to the extent practicable so that inadmissible evidence is not suggested to the jury by any means." *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 174–75 (D.D.C. 2015) (Howell, J.). "In evaluating the admissibility of proffered evidence on a pretrial motion *in limine* the court must assess whether the evidence is relevant and, if so, whether it is admissible." *Mosquera-Murillo*, 153 F. Supp. 3d at 175.

The proponent of any evidence bears the burden of establishing that it is both relevant and admissible. *Id.*; *Dowling v. United States*, 493 U.S. 342, 351 n. 3 (1990). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence: and . . . the fact is of consequence in determining the action." FED. R. EVID. 401. Although relevant evidence is generally admissible, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 402, 403.

2

The government respectfully submits the following motions *in limine* regarding evidence and argument at trial. *First*, the government moves to preclude arguments in opening or otherwise that are not supported by a factual basis. *Second*, the government moves to preclude defense counsel from soliciting jury nullification by making arguments or asking questions as to topics not at issue and that are likely to arouse jurors' passions. *Third*, the government moves to preclude defense counsel from introducing third-party perpetrator arguments without a sufficient factual basis. And *fourth*, the government seeks to introduce statements made by the defendant.

### A. Defense Should be Precluded from Asserting Facts in Opening Without a Good Faith Basis.

Defense counsel should be prohibited from making any arguments in opening that are not supported by facts in evidence. "The D.C. Circuit has long made clear that statements made in opening and closing arguments to the jury must be supported by evidence introduced at trial." *Democracy Partners, LLC v. Project Veritas Action Fund*, No. CV 17-1047 (PLF), 2021 WL 4785853, at *7 (D.D.C. Oct. 14, 2021) (internal quotations omitted). "The purpose of an opening statement is to provide background on objective facts while avoiding prejudicial references." *United States v. Moore*, 651 F.3d 30, 51–52 (D.C. Cir. 2011), *aff'd sub nom. Smith v. United States*, 568 U.S. 106, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013). As such, it "should be an objective summary of the evidence reasonably expected to be produced," and not "an opportunity to poison the jury's mind . . . or to recite items of highly questionable evidence."[1] *Id.* "In the absence of such a good faith evidentiary basis, any probative value of a representation may be substantially

---

[1] While this case dealt specifically with statements made by prosecutors, the same concerns regarding jury confusion and prejudice apply to statements made by defense counsel. Additionally, the same ethical duties of candor to a tribunal apply equally to prosecutors and defense counsel.

3

outweighed by the dangers of confusing the issues for the jury to address, misleading the jury, causing under delay, and wasting time." *Democracy Partners*, 2021 WL 4785853, at *7.

Despite these standards, it has unfortunately become common for defense counsel in this courthouse to make arguments in opening statements based on evidence that is never admitted or even sought to be admitted during trial. For example, in *United States v. Artie Byrd*, 22-cr-309, Mr. Byrd was charged with possessing a firearm after he fled from law enforcement during a traffic stop. During closing arguments, an Assistant Federal Defender provided an alternative (albeit false) explanation for why Mr. Byrd fled from police:

> 4  Now, ladies and gentlemen, let's get right into
> 5  it. Let's talk about the reason why Mr. Byrd did not stop
> 6  that night. Here we have a young African-American man
> 7  driving in his 2005 Nissan through upper Northwest D.C.,
> 8  when he looks in his rear-view mirror and sees the thing
> 9  that for reasons we can all understand and empathize with
> 10 strikes so much fear in folks that look like him.

Exhibit A, Feb. 23, 2024 Tr at 29:4-10.

The closing continued with thinly veiled references to police brutality and related protests:

> 17 Ladies and gentlemen, we've all seen the videos.
> 18 We've all read the hashtags. These are all the things that
> 19 are going through Mr. Byrd's mind at that time. And with
> 20 all those things going through his mind, he made a decision.
> 21 That decision is what we see in that surveillance video: a
> 22 man who is running because he's scared.

*Id.* at 29:17-22. Despite expressly referencing "all the things going through Mr. Byrd's mind at the time," and the decisions that Mr. Byrd made as a result, defense counsel had not called a single witness at trial, including Mr. Byrd.

The first *Byrd* trial resulted in a hung jury. During the *Byrd* re-trial, the Assistant Federal Public Defenders persisted with their inappropriate argument. During opening statements in the re-trial, an Assistant Federal Defender provided a lengthy first-person narrative told from the defendant's point of view of his flight from police in a vehicle to when he discarded a firearm in a yard and was arrested. *See* Exhibit B, September 22, 2023 Tr. at 208-210. The opening statement claimed that Defendant Byrd had taken his girlfriend out to dinner and drinks, and was driving his cousin home as a favor to his aunt when the police attempted to stop him. *Id.* at 209:2-210:16. Defense counsel specifically claimed that the recovered gun belonged not to Byrd but to his cousin. *Id.* at 214:18-20. But at trial, defense counsel did not call any witnesses to substantiate these claims: not Byrd, not his aunt, and not his cousin. And despite police body-worn camera and surveillance video, there was no evidence whatsoever that anyone else was in the car with Byrd.

Similarly, in *United States v. Winston Kelly*, 21-cr-0059 (RC), an Assistant Federal Public Defender provided a similar first-person narrative for how Defendant Kelly was feeling in the moments leading up to his arrest, with references to him celebrating with friends prior to his arrest. *See* Exhibit C, June 6, 2023 Tr. at 9:14-25. But again, at trial, defense counsel did not call any witnesses to substantiate these claims, including Defendant Kelly.

These tactics are inappropriate and unethical. They create prejudice that cannot be easily undone. When a juror hears baseless assertions presented to them as fact at the very beginning of trial, it may be difficult if not impossible to correct that misimpression. Therefore, defense counsel

should be precluded from opening on facts for which they do not have a good faith basis to believe will be admitted into evidence.[2]

### B. Counsel Should Be Precluded from Introducing Improper Evidence or Arguments.

A defendant has no right to ask a jury to nullify the charges against him. *See, e.g.*, *Sparf v. United States*, 156 U.S. 51, 101–02 (1895) ("We must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court and apply that law to the facts as they find them to be from the evidence."). And our Courts "have the duty to forestall or prevent such conduct" if it can be done without "interfering with guaranteed rights or the need to protect the secrecy of jury deliberations." *United States v. Wilkerson*, 966 F.3d 828, 835 (D.C. Cir. 2020) (citing *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997)).

The D.C. Circuit has made clear:

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. <u>Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power</u>.

*United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (emphasis added). Evidence that only serves to support a jury nullification argument or verdict has no relevance to guilt or innocence. *See United States v. Gorham*, 523 F.2d 1088, 1097–98 (D.C. Cir. 1975). As such, the government respectfully requests that defense counsel be precluded from asking questions, or making argument, regarding any of the following topics.

---

[2] To the extent that defense counsel is not certain as to whether certain witnesses, including the defendant, will testify at trial as to certain facts, the appropriate and ethical course is to avoid mentioning those facts during opening statements. Put differently, if defense counsel does not know that a certain witness will testify, they do not have the requisite good faith basis that the witness' testimony will be admitted.

    1.    ***Counsel Should be Precluded from Referencing the Potential Punishment or Consequences of the Charged Crimes.***

Defense counsel in this courthouse have also taken to referencing the potential punishment for offenses to juries during openings or argument. For example, in the retrial of *Byrd*, an Assistant Federal Defender ended her opening statement with the demand: "Send him home." Exhibit B, Tr. at 10:9. In *United States v. Karen Hylton*, 23-cr-262 (CKK), an Assistant Federal Defender ended a closing argument with a similar statement: "We'll all go home to our families tonight, but Ms. Hylton has no one to go home to. Just make sure she goes home. Find her not guilty." Exhibit D, Tr. at 47:13-15. References like these are patently inappropriate.[3]

D.C. Jury Instruction 2.505, which the government intends on requesting, states:

> The question of possible punishment of the defendant in the event a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

As the D.C. Circuit has explained: "It is well established in this jurisdiction that the jury's only function is to assess guilt or innocence on the basis of their independent view of the evidence." *United States v. Patrick*, 494 F.2d 1150, 1153 (D.C. Cir. 1974) (finding reversible error when judge informed jury it could recommend psychiatric treatment as a potential sentence). Therefore, "the jury is not to consider the potential punishment which could result from a conviction." *United States v. Broxton*, 926 F.2d 1180, 1183 (D.C. Cir. 1991); *see also United States v. Dupree*, No. CR 22-275 (CKK), 2024 WL 2746963, at *2 (D.D.C. May 29, 2024) (granting government's motion *in limine* on similar grounds because "arguments regarding the consequences of conviction are

---

[3] The reference in the *Hylton* trial was particularly inappropriate as Ms. Hylton was not detained and was unlikely to face any jail time.

categorically impermissible."). Because the question of a potential sentence is not for the jury, it can only serve to distract the jury, confuse the issues, and function as a request for nullification. Therefore, defense counsel should be precluded from raising this issue in front of the jury.

### 2. *Counsel Should be Precluded from Re-Litigating the Court's Prior Rulings*

The Court "'retains broad discretion to control cross-examination'" and may prohibit the defendant from presenting inadmissible evidence or argument. *United States v. Sutton*, 2024 WL 278070, at **11-12 (slip op.) (D.D.C. Jan. 25, 2024) (quoting *United States v. Hemphill*, 514 F.3d 1350, 1360 (D.C. Cir. 2008)); *United States v. Anderson*, 881 F.3d 1128, 1138-39 (D.C. Cir. 1989)) (Friedman, J.). This is true, because "[a]lthough criminal defendants have a right to present a defense, courts are not required to permit defendants to present to the jury evidence that is not admissible because it is not relevant or probative of a fact of consequence." *Id.* at *11 (citing *United States v. Yousef*, 327 F.3d 56, 128 (2d Cir. 2003); *United States v. Libby*, 467 F. Supp. 2d 20, 27 (D.D.C. 2007) (Walton, J.)).

As of the filing of this Omnibus Motion, the defendant has not filed a motion to suppress any of the evidence based on the Fourth Amendment and the Government's 404(b) Motion (ECF No. 15) is pending. Assuming, *arguendo*, that the defense does not seek to suppress any evidence and the Court grants the Government's 404(b) Motion, counsel should be precluded from arguing, or conducting cross-examination, in such a way that suggests the arrest of the defendant in this case, or the defendant's prior convictions, were illegal. Allowing the defendant to present such evidence or argument would violate the law of the case doctrine and further be improper given that the defendant does not dispute the legality of the stop in this case. As to the former, once ruled upon, this Court's legal decision is the law of the case for future stages of the same litigation. *United States v. Singleton*, 759 F.2d 176, 178-79 (D.C. Cir. 1985) (applying "law of the case"

doctrine to preclude re-litigation of the Court's determination that "show up" identifications were reliable).

> The "law of the case" rule is based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise that ... it would be impossible for an appellate court "to perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal" thereof.

*Id.* (quoting *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967)) and citing *Bouchet v. National Urban League, Inc.*, 730 F.2d 799, 806 (D.C.Cir.1984); *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 19 (5th Cir.), *cert. dismissed*, 419 U.S. 987 (1974)).

Defendant has not challenged the legality of his arrest in this case or sought to suppress any evidence. Further, he has previously had the opportunity to challenge his arrests in his prior cases. As such, the defendant should be precluded from making any argument, or asking any questions, about the following:

- The legality of the defendant's arrest in this case or in his prior cases.
- The legality of the search of defendant's person conducted incident to his arrest in this case.
- The legality of the recovery of the firearm in this case.
- The legality of the search conducted of defendant's cellphone, conducted pursuant to lawful search warrant (25-sw-33).

### 3. *Counsel Should be Precluded from Asking Questions or Making Argument Regarding Alleged Third-Party Perpetrators.*

Evidence of a third-party perpetrator defense is properly excluded where the defense fails to show a sufficient nexus between the third-party perpetrator and the charged offense (and where the probative value of the third-party perpetrator evidence is outweighed by its tendency to confuse issues or mislead the jury). *See United States v. Cabrerra*, No. 95-3052, 1996 WL

135718, at *2 (D.C. Cir. 1996); *Miller v. Brunsman*, 599 F.3d 517, 518 (6th Cir. 2010); *United States v. Moore*, 590 F. Supp. 3d 277, 283–84 (D.D.C 2022). As the Second Circuit noted:

> A criminal defendant generally has the right to introduce at trial evidence tending to show that another person committed the crime, so long as the evidence "sufficiently connect[s] the other person to the crime." But "[t]he potential for speculation into theories of third-party culpability to open the door to tangential testimony raises serious concerns." A court "must be sensitive to the special problems presented by 'alternative perpetrator' evidence" and must ensure that the defendant shows a "sufficient . . . nexus between the crime charged and the asserted 'alternative perpetrator.'"

*United States v. Hendricks*, 921 F.3d 320, 331 (2d Cir. 2019) (emphasis added) (internal citations omitted). In *Hendricks*, the Second Circuit rejected the appellant's argument that the required nexus had been established where "none of the evidence places [the third-party perpetrator] anywhere near the robbery scene or suggests that he was otherwise involved in the crime." *Id.; see also Cabrerra*, 1996 WL 135718, at *3 (affirming the District Court's decision to exclude evidence of past convictions of an alleged third-party perpetrator "given the relatively weak nexus" between the third-party perpetrator and the defendant).

As noted above, in both *Byrd* trials, the Assistant Federal Defenders introduced evidence of a third-party perpetrator with absolutely no factual basis. They should not be permitted to do so here unless and until they proffer facts establishing a sufficient nexus between the alleged third-party perpetrator and the charged offenses. The government further requests that, pursuant to Rule 16(b), this Court order the defendant to disclose to any evidence they plan to submit in support of such a defense.

C. **The Government should be Permitted to Introduce Statements Made by the Defendant**

It is blackletter law that a "statement . . . offered against an opposing party" that "was made by the party in an individual or representative capacity" is "not hearsay." FED. R. EVID. 801(d)(2)(A). Accordingly, pursuant to Federal Rule of Evidence 801 (d)(2)(A), the government will seek to introduce at trial any of the defendant's statements made on scene and via text messages obtained from the defendant's cellphone. A full list of these statements will be made available to defense and the Court as a part of the parties' joint pretrial statement.

## CONCLUSION

For all of the foregoing reasons, the government requests that the Court grant its pretrial motions to permit the introduction of relevant evidence and to ensure the efficient and orderly presentation of evidence at trial.

Respectfully submitted,

EDWARD R. MARTIN JR.
UNITED STATES ATTORNEY
D.C. BAR NO. 481866

*/s/ Sarah C. Martin*
Sarah Martin
D.C. Bar No. 1612989
Assistant United States Attorney
601 D Street NW
Washington, DC 20579
(202) 252-6775
Sarah.Martin@usdoj.gov