**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**GUY CUMMINGS,**<br><br>**Defendant.** | **Case No. 25-cr-44 (JEB)** |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Over the past 15 years, the Defendant, Guy Cummings, has engaged in a lengthy pattern of criminal conduct, including violent crimes. This pattern demonstrates that a significant period of incarceration is necessary to punish the defendant for his actions and to protect the community. The Defendant has shown a repeated disregard for compliance with the terms of court ordered supervised release and stay away orders. On January 18, 2025, when the Defendant unlawfully possessed a stolen Glock 26 pistol, the Defendant was in violation of such an order. Specifically, he was in violation of both a barring notice and a court order that prohibited him from being on the grounds of the Lincoln Heights housing complex. The Defendant's willful disregard for the law and his repeated failure to comply with the terms of court ordered supervision make clear that a sentence of 96 months' incarceration is both necessary and appropriate. Accordingly, the Government respectfully requests that the Court sentence the Defendant to 96 months' incarceration followed by a period of three years of supervised release.

## BACKGROUND

As proven at trial in this case, the Defendant illegally possessed a stolen, loaded firearm in the Lincoln Heights neighborhood in the early morning hours of January 18, 2025. The Defendant unlawfully possessed this loaded weapon while on the grounds of the Lincoln Heights housing

1

complex.  The Defendant is barred from this community because he had been previously arrested for Carrying a Pistol Without a License on a District of Columbia Housing Authority ("DCHA") Property.

On January 18, 2025, the Defendant was standing with a group of men when two MPD patrol vehicles drove into the 300 block of 50th Street NW.  As the police cars approached the group of men, the Defendant started to walk away.  When Officer Jacob Pfaff began to exit his cruiser, the Defendant took off, sprinting away from officers.  The Defendant ran because he was illegally armed with a stolen Glock 9mm pistol and because he had been ordered to stay away from the Lincoln Heights housing complex.  The Defendant knew that if police recognized him, they would arrest him for being in violation of the stay away order and find his illegal firearm.



*A still image from Government's Exhibit 314 – video footage of the Defendant fleeing from police.*

2

The Defendant led Officer Pfaff on a chase through the Lincoln Heights housing complex, weaving between buildings and in and out of courtyards.  The Defendant needed to get away from Officer Pfaff long enough to get rid of the firearm he illegally possessed.



*A still image from Government's Exhibit 314 – video footage of the Defendant running from Officer Pfaff.*

As the Defendant ran past 605 50th Street NE he saw an opportunity to get rid of his gun and he took it.  The Defendant tossed his stolen gun over a brick wall into the snow.  But Officer Pfaff was behind the Defendant and saw him make the tossing motion with his right hand.



*A still image from Government's Exhibit 314 – video footage of the Defendant running from Officer Pfaff past 305 50th Street NE.*

Determined to lead Officer Pfaff away from his discarded firearm, the Defendant continued to run, stopping only once he was on the other side of the housing complex. Officer Pfaff finally caught up to the Defendant, and, after a brief struggle, detained the Defendant behind 315 50th Street, NE.  At that point, Officer Pfaff recognized the Defendant and knew that the Defendant was subject to stay away order issued by the Superior Court of the District of Columbia on June 28, 2024, in case number 2024 CMD 004397.  That order required the Defendant to stay away from the Lincoln Heights neighborhood.



*A still image from Government's Exhibit 314 – video footage of the Defendant leading Officer Pfaff away from 305 50th Street NE.*

After the Defendant was secured, Officer Pfaff walked the Defendant's flight path back towards 305 50th Street NE, to the place where he saw the Defendant make a tossing motion with his right hand over the brick wall. There, Officer Pfaff discovered a black Glock 26 pistol on the ground on the other side of the brick wall. The firearm was a few inches from the initial impact point where the firearm first landed, indicating that the firearm was thrown towards the building at an angle and was not dropped straight down.



***Government Exhibit 204 - Photo taken by Officer Pfaff when he found the recovered the Defendant's 9mm pistol.***

Officer Pfaff also noticed that the snow around the Defendant's firearm was not disturbed, and no other evidence of foot traffic was visible around where the firearm landed. Officer Ackah recovered the Defendant's firearm, which was a Glock 26, 9mm pistol (serial# ADLV600). It contained one round of 9mm ammunition in the chamber and 15 rounds of 9mm ammunition in a 17-round magazine.



*Government Exhibit 207 - Recovered 9mm pistol*



*Government Exhibit 209 – Magazine with one round in the chamber and 15 rounds in a 17-round magazine.*



*Government Exhibit 210 – Magazine and ammunition removed from magazine.*

DNA testing linked the Defendant to the Glock 26 pistol recovered by police.  At trial, FBI Forensic DNA Examiner Kara Gregor testified that DNA analysis of swabs from the Glock 26 pistol resulted in very strong support for inclusion of the Defendant as one of the contributors to the DNA mixture obtained from the firearm.

Based on this evidence, and all the other evidence admitted at trial, the jury convicted the Defendant of one count of 18 U.S.C § 922(g)(1).

## ARGUMENT

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –
    (A) the applicable category of offense committed by the applicable
    category of defendant as set forth in the guidelines –
        (i) issued by the Sentencing Commission . . .; and
        (ii) that, . . . are in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement –
    (A) issued by the Sentencing Commission . . . and
    (B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.* at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven

9

by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

### THE APPLICABLE SENTENCING GUIDELINES

The PSIR estimates the Defendant's offense level to be 22 and his criminal history to be category V, yielding a Guidelines sentencing range of 77 to 96 months' imprisonment. PSIR at ¶ 93. Additionally, the PSIR reflects a Guidelines range for a term of up to 3 years of supervised release on Count 1. *Id.* at ¶ 96. The Government agrees with these calculations.

### THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Government recommends that the Court sentence the Defendant to 96 months' imprisonment, followed by three years of supervised release. This sentence—at the top end of the applicable guidelines range—reflects the serious nature of this offense, the Defendant's lengthy and violent criminal history, and provides adequate deterrence to others in the community.

### I.    The Nature and Circumstances of the Defendant's Offense.

The Defendant was convicted by a jury of illegally possessing a stolen Glock 26 pistol loaded with one round in the chamber and 15 rounds of ammunition in a magazine with a 17-round capacity. "Illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community." *United States v. Blackson*, Case No. 23-cr-25 (BAH), 2023 WL 1778194, at *7 (D.D.C. Feb 6, 2023). This is particularly the case here, because the Defendant's stolen firearm was loaded and had a round chambered. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling."). And here, the Defendant possessed this firearm

in a residential neighborhood, from which he had been ordered to stay away from and was barred, because he had previously been arrested for carrying a pistol without a license on a DCHA property.

Further, arguments concerning "mere possession" ignore the epidemic of gun violence our community has faced. A loaded firearm is a deadly weapon. It has the ability with a single pull of the trigger to end a life. A firearm can escalate a mundane disagreement or a petty offense into a deadly encounter. The reason law enforcement targets the possession of firearms prior to the commission of a crime is because once an individual makes the decision to produce a firearm and pull the trigger, law enforcement is powerless to intervene.  And Congress indicated how seriously these offenses should be taken when it increased the maximum sentence for violations of 18 U.S.C. 922(g) from 10 years to 15 years.

In sum, this was a dangerous offense justifying a 96-month term of incarceration.

2. **The History and Characteristics of the Defendant.**

The Defendant has a lengthy and violent criminal history stretching back over a decade. This criminal history makes clear that a significant period of incarceration is both appropriate and necessary to punish the defendant for his repeated criminal acts and to protect the community.

The Defendant's criminal history includes three juvenile adjudications, including one for robbery dating back to 2013.  PSIR at ¶ 30.  But the Defendant's criminal conduct did not stop there.  In January 2016, at just 19 years old, the Defendant was arrested for Unlawful Possession of Liquid PCP.  PSIR at ¶32.  Just three months later, he was arrested and charged in connection with an armed robbery that the Defendant committed in December 2015.  PSIR at ¶ 33.  In that case, the Defendant, after accusing the victim of "jumping" his cousin, violently robbed the victim. PSIR at ¶ 33.  The Defendant placed a semi-automatic firearm to the left side of the victim's torso

11

and threatened to shoot the victim if they did not hand over all their stuff. *Id.* When the victim complied, the defendant threatened the victim further, instructing him not to move or he would be shot. *Id.* In March 2017, after having pled guilty to Unlawful Possession of PCP, Robbery (Pistol), and Carrying a Dangerous Weapon, the Defendant was sentenced to 48 months of incarceration and three years of supervised release. PSIR at ¶¶ 32-33.

Following his release from incarceration the Defendant struggled to comply with his supervision conditions. The Defendant was arrested multiple times while on supervision. In October of 2020, the Defendant was arrested for fleeing from law enforcement during a traffic stop. PSIR at ¶ 34. The defendant pled guilty to this offense in October 2022. PSIR at ¶ 34. In May of 2021, while still on supervision, the Defendant was arrested and charged with Armed Robbery, assault, and related firearms charges in Prince George's County, Maryland.[1] PSIR at ¶ 32. The defendant was arrested for a third time while on supervision in October of 2021 for tampering with a GPS device and convicted of that offense in November of 2022. PSIR at ¶ 32. In March of 2023, the Defendant's supervision was revoked and he was sentenced to 12 months of incarceration. PSIR at ¶ 33. The Defendant was released from custody in January 2024.

Just four months later, the Defendant was arrested again, this time for Contempt of Court, when the Defendant was arrested by police at the Lincoln Heights community despite being barred from that DCHA property for five years. PSIR at ¶ 37. The Defendant pled guilty and was sentenced in June 2024 to a fully suspended sentence and one year of supervised probation. PSIR at ¶ 37. Despite being given another opportunity to remain in the community, the Defendant's probation was revoked and he was sentenced to six months incarceration after he was arrested by

---

[1] These charges were later dismissed.

police for his actions in this case: illegally possessing a stolen firearm and violating a stay away order from the Lincoln Heights housing complex.  PSIR at ¶ 37.

The Defendant's decision to unlawfully carry a stolen firearm, especially in light of his lengthy criminal history — a criminal history that demonstrates the Defendant cannot comply with the terms of Court ordered supervision — warrants the requested sentence of incarceration at the top of the applicable guidelines.

## II.   The Need for the Sentence Imposed.

The requested sentence is sufficient but no greater than necessary to meet the goals of sentencing. The sentence provides specific deterrence: it will keep our community safe from the Defendant for a significant period of time. It provides general deterrence: it will signal to the community that the possession of illegal firearms is a deadly serious matter and hopefully deter others from doing so. And it provides an opportunity for the Defendant to reflect on the serious and repetitive nature of his criminal conduct.

The Defendant contends that he possessed this firearm for self-defense purposes.  While that may be true, this factor does not warrant a lesser sentence.  The Defendant's prior convictions bar him from possessing firearms.  And having threatened to shoot another person during an armed robbery, the Defendant knows better than most the dangers associated with the possession of an illegal firearm.

Over the course of more than a decade, the Defendant has been involved in a range of criminal activity from robberies and illegal drug possession to fleeing law enforcement, contempt of court, and tampering with a GPS device.  This criminal history, combined with the Defendant's repeated failure to comply with the terms of his supervised release, makes clear that the only way to protect the community and adequately punish the defendant for his conduct is to sentence him

at the top of the applicable guidelines range.  Lengthy prison sentences, court supervision, and the threat of rearrest have done nothing to deter him. He is now 29 years old. He no longer has the excuse of youth or impulsiveness. The requested sentence of 96 months' incarceration and three years of supervised release is a reasonable one.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court impose a sentence of 96 months of incarceration followed by three years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:        */s/ Benjamin Helfand*
Benjamin Helfand
D.C. Bar No. 1658708
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-252-7059
Benjamin.Helfand@usdoj.gov